# In the United States Court of Federal Claims
No. 15-1197C
(Originally filed: November 2, 2015)
(Reissued: November 13, 2015)[1]

* * * * * * * * * * * * * * * * * * * *

U.S. SECURITY ASSOCIATES, INC.,

      *Plaintiff*,

v.

THE UNITED STATES,

      *Defendant*,

and

SECURIGUARD, INC.

      *Intervenor*.

Post-award bid protest; preliminary injunction; likelihood of success on the merits; fixed price; lowest priced technically acceptable offer.

* * * * * * * * * * * * * * * * * * * *

    *Jerry A. Miles*, Rockville, MD, for plaintiff, with whom was *Ann M. Golski*.

    *Amanda L. Tantum*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Steven J. Gillingham*, Assistant Director, for defendant. *William S. Meyers* and *Sigmund Adams*, Office of the General Counsel, Administrative Office of the United States Courts, of counsel.

    *Keir X. Bancroft*, Washington, DC, with whom was *J. Scott Hommer*,

---

[1] This opinion was first issued under seal to afford the parties an opportunity to propose redaction of protected information. Those redactions are indicated by brackets.

Washington, DC, for intervenor.

ORDER AND OPINION

BRUGGINK, *Judge*.

Pending in this bid protest is plaintiff's motion for preliminary injunctive relief.[2] The matter is fully briefed. Subsequently, plaintiff filed a notice of voluntary dismissal under RCFC 41(a)(1) along with a motion for relief from the protective order in place in this case, in order for plaintiff to file a new protest at the Government Accountability Office ("GAO").[3] The motion indicates that, because access to the administrative record in this case suggests what plaintiff's counsel considers to be additional grounds beyond those of which plaintiff was aware at the time of the GAO protest, it wishes dispensation from the protective order here in order to return to GAO to advance those new arguments there. Oral argument on both motions was scheduled for October 29, 2015. At the beginning of oral argument, plaintiff notified the court that it intended to withdraw its notice of dismissal and proceed with the present suit. After oral argument, plaintiff affirmed that intent by filing a notice of withdrawal of its notice of dismissal and withdrawal of its motion for relief from the protective order. As announced at oral argument, and for the reasons set out below, we deny the request for a preliminary injunction.

PROCEDURAL AND FACTUAL BACKGROUND[4]

Plaintiff, U.S. Security Associates, Inc., was one of several holders of a Schedule 84 contract for security services with the General Services Administration ("GSA"). On June 19, 2015, the Administrative Office of the United States Courts ("AO"), acting under that contract, issued a Request for Quotations (Solicitation No. 061915) for security services at the Thurgood Marshall Building in Washington, DC. Those services are currently, and were in the recent past, subject of a different contract issued by the Architect of the

---

[2] Plaintiff also applied simultaneously for a temporary restraining order. By order dated October 16, 2015, that application was denied without prejudice to consideration of the motion for a preliminary injunction.

[3] Plaintiff proceeded initially at GAO and was unsuccessful.

[4] The facts are drawn from the Administrative Record

United States Capital, which has authority to act with respect to the Marshall Building. The incumbent on that contract is CMI Management, Inc. ("CMI"). Plaintiff is the primary subcontractor for CMI under the incumbent contract. After an extension triggered by plaintiff's protest at GAO, the incumbent contract is currently scheduled to expire on October 31, 2015.

The RFQ proceeds under Federal Acquisition Regulation ("FAR") Subpart 8.4, which permits GSA to set up blanket purchase agreements ("BPA") and for authorized entities, such as the AO, to place task orders under the BPA. The task orders can be competed among the holders of the BPA, as the AO did here. The RFQ contemplated award of a fixed price task order to a single awardee for one year with options potentially extending another four and a half years. The award would be made to the "lowest price technically acceptable" ("LPTA") offeror. Offerors were asked to submit their quotations in two volumes, one setting out their price proposal and the second in a technical proposal. The procurement would then proceed in three steps. All offerors who had self-certified that they had "at least 5 years security service experience in a Level IV facility," AR 43, were permitted to proceed to step two. In step two, the overall lowest price offer was identified. Then in step three, only that lowest price offer was evaluated to determine if the offeror's technical proposal was acceptable as measured against three evaluation factors by the Technical Evaluation Team ("TET"): Key Personnel, Staffing Plan, and Past Performance. If the lowest price proposal was acceptable, the search was over and a contract awarded. If not, then the TET advanced to consideration of the next lowest price offer.

With respect to key personnel, offerors were required to submit at least one resume for two senior positions: On-Site Security Manager and Captain. The staffing plan needed to reflect how the staff would be recruited, selected, and allocated over the required posts. In order to satisfy the past performance requirement, offerors were to submit information concerning five contracts of similar size, scope and complexity in a comparable facility that had been performed within the past three years or were being currently performed.

The AO received quotations from [ ] entities, including plaintiff and the intervenor, Securiguard, Inc. All [ ] met the requirement of certifying five years of security experience. The contracting officer then determined that Securiguard offered the lowest proposed price. The TET therefore evaluated Securiguard's proposal and concluded that it was technically acceptable in all areas and had no deficiencies. Securiguard was awarded the task order on September 8, 2015.

Plaintiff filed a protest with GAO on September 14, and the statutory stay attached. In order to maintain security services under the incumbent contract, the Architect of the Capitol extended the contract with CMI through the end of October. When the GAO denied the protest on October 8, the AO instructed Securiguard to begin transition preparation with the goal of commencing performance on November 1, 2015. Plaintiff filed its complaint in this court on October 13, 2015, along with a motion for a temporary restraining order and permanent injunction.

DISCUSSION

To obtain preliminary injunctive relief pursuant to Rule 65 of the Rules of the United States Court of Federal Claims ("RCFC"), plaintiff must persuade the court that it is likely to succeed on the merits of the protest, that it will be irreparably harmed if an injunction is not awarded, that the harm to it exceeds the harm to the United States and interested third parties if an injunction is not granted, and that the public interest militates in favor of an injunction. Because the matter is before us on a request for a preliminary injunction, even if we deny the request, plaintiff may still proceed to seek a permanent injunction. Similarly, if we grant the injunction now, the government and intervenor may still argue that a permanent injunction is unwarranted. There is no prejudicial effect to a grant or denial.[5] Nevertheless, while the harm and public interest considerations obviously will differ in considering preliminary or permanent relief, there is no blinking the fact that, with respect to the merits, consideration of the likelihood of success now requires the court to look at the same arguments it likely will consider when the request for permanent relief is addressed.

Defendant's opposition to the request for a preliminary injunction raises a subject matter jurisdiction defense and a defense of lack of standing, which, in this context, also implicates jurisdiction. Normally we would have to satisfy ourselves of subject matter jurisdiction and plaintiff's standing in order to proceed. Three factors persuade us that it is unnecessary to resolve those questions now, however. First, we are confronted with an issue of whether interim relief is appropriate, not a permanent resolution of the merits of the case. Second, the question of subject matter jurisdiction, as even defendant concedes, is not entirely straight forward. And the matter of standing is factually muddled because there is at least a theoretical possibility that, if

---

[5] See discussion below at page 7.

plaintiff is successful in knocking Securiguard out of the competition, the agency would have to advance to the next lowest price offeror, which in turn could be rejected, and so on, [                    ]. Third, we believe that consideration of one of the elements of plaintiff's burden of proof–likelihood of success on the merits–is so weighted against plaintiff that it is unnecessary to address, much less resolve, these otherwise preliminary issues at this point. We therefore forego, for now, consideration of the government's jurisdictional defenses (as well as two of the three other factors which plaintiff must establish) and move to the likelihood of plaintiff's success on the merits.

Plaintiff must show that the AO's decision was either arbitrary or capricious or not in accordance with law. There is no hint of the latter in plaintiff's briefing, so the question is whether plaintiff is likely to persuade us that the AO's actions were arbitrary or capricious. Under any circumstances, of course, a protestor faces a tough hurdle in overcoming the deference accorded the actions of the procuring agency. Here, however, we conclude that there is nothing close to a telling argument.

Plaintiff contends that the agency improperly treated Securiguard's proposal as technically acceptable because [


                                                                                               ].
AR 43. The contracting officer was [                    ], however, because Securiguard [
            ], AR 343, The contracting officer [

            ]. As counsel for defendant pointed out at oral argument, the RFQ merely called for a description of the offeror's code of conduct, and it was only in the RFQ's explanation of what the evaluation team would look at that there was a reference [                    ]. We can understand why the CO was disinclined to reject the lowest price offer on this ground. [


            ]. Rejecting the proposal for failure to submit it with the proposal would arguably have been arbitrary in light of the failure to spell out the requirement in the RFQ.

Plaintiff's real argument is that Securiguard's price is too low. Thus the agency should have concluded that Securiguard's price proposal was not responsive to the RFQ and that its price was neither fair nor reasonable. FAR

5

9.103(a) dictates that awards can only be made to responsible offerors, which, as plaintiff points out, means that the prospective contractor is "able to comply with the required or proposed delivery or performance schedule, taking into consideration all existing commercial and governmental business commitments." 48 C.F.R. 9.104-1(b) (2015). In a nutshell, plaintiff argues that Securiguard's price is so low that it could not possibly attract or keep enough qualified staff to perform the contract and that it will run afoul of the collective bargaining agreement ("CBA") applicable to the employees it would hire. Plaintiff argues that the solicitation requires compliance with the prevailing wage rates as set by the CBA.[6] Plaintiff argues that the awardee's prices are too low, at least in the contract's out years, for the intervenor to pay the hourly wages it proposes and still satisfy the CBA.

Plaintiff compares the CBA-mandated pay rates with intervenor's proposed labor rates for the options years, [ 
]. Plaintiff avers that its own historical negotiations with the union have involved [ 
]. It concludes that the purported inconsistency between intervenor's proposed price and the CBA (or plaintiff's experience with it) demonstrate that the proposal was not responsive.

As the government points out, however, and as GAO concluded, there are problems with this argument. First, plaintiff cannot, and indeed has not attempted to draw into question the AO's determination that Securiguard's technical proposal was acceptable. We must therefore assume that Securiguard will perform as advertised. Second, plaintiff cannot demonstrate that Securiguard will not pay its employees legally required wages. Indeed, Securiguard's proposal plainly states that it will comply with the CBA and that it will pay prevailing wages.[7] AR 363. Nor can plaintiff demonstrate that the

---

[6] There was discussion during oral argument about whether the CBA had been specifically incorporated by the solicitation. Plaintiff is correct that a Questions and Answers sheet attached to solicitation amendment two implies that the first amendment had incorporated the CBA. AR 166. What is not stated there, however, or anywhere else in the solicitation, is a requirement that the offeror promised to charge the government the full CBA rate for every year.

[7] Also in contrast to plaintiff's allegations regarding Securiguard's intent not
(continued...)

6

resumes of the key personnel are inadequate for the work required. What plaintiff wants the court to do is step into the shoes of the agency and substitute its judgment that the technical plan is inadequate in light of Securigaurd's proposed rates for future option years. If the TET was satisfied, the court is in no better position to judge the adequacy of proposals. In any event, if Securiguard promises to do the work required, its ultimate satisfaction of that requirement is a matter of contract performance. Plaintiff's doubts in that regard are not a basis for enjoining performance. In the context of a fixed price procurement, price risk is borne by the offeror not the agency.[8]

In short, there is no basis for disagreeing with the agency's conclusion that the technical proposal was acceptable. While plaintiff suggested the problem could be cast in terms of price realism, or reasonableness, we disagree. The prices were in a relatively close range, and clearly plaintiff does not contend that the intervenor's price was too high.

Even if the likelihood of success were not great, we would entertain an argument that there is such a high likelihood of permanent and irreparable harm to the movant that the likelihood of success is not determinative. Such a risk has plainly not been established here, however. The court is committed to determine promptly whether plaintiff is ultimately successful on the merits, and, given plaintiff's promptness in requesting injunctive relief, it will not be prejudiced in obtaining permanent injunctive relief, if it is warranted. The only injury we can see, therefore, is that plaintiff might miss out on as much as one month's net profit. That relatively minor financial harm certainly does

---

(...continued)
to follow the CBA are several statements earlier in Securiguard's Technical Proposal, [

]. In both instances, Securiguard confirmed its intent to follow the applicable CBA. *See* AR 338, 339.

[8] In fact, inervenor affirmed in paragraph 8 of its pricing narrative that it bears the price risk, stating that it [

]. AR 365. The very next paragraph offers [

]. *Id.*

not outweigh the fact that the government has shown that it *is* paying more on a monthly basis to keep the incumbent in place.

CONCLUSION

      Because plaintiff has not established a likelihood of success on the merits nor shown irreparable harm, its motion for a preliminary injunction is denied. The parties are directed to confer and propose by November 9, 2015, jointly if possible, a schedule for resolution of the merits through cross-motions for judgment on the administrative record. Oral argument can be held on December 1, 2, or 3, 2015.

                                      s/Eric G. Bruggink
                                      ERIC G. BRUGGINK
                                      Judge